**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

```
                                :
ANDREW N. PRICE,                :
     Plaintiff                  :
                                :
     v.                         :
                                :
J&H MARSH & McLENNAN, INC.,     :
     Defendant                  :
                                :   No. 2:03-CV-292
MARSH USA INC., s/h/a           :
J&H MARSH & McLENNAN, INC.,     :
     Third-Party Plaintiff      :
                                :
     v.                         :
                                :
CHUBB CUSTOM INSURANCE CO.,     :
     Third-Party Defendant      :
                                :
```

**OPINION AND ORDER**

This is a breach of contract case involving a dispute over a directors and officers liability insurance policy.  Third-party defendant Chubb Custom Insurance Co. moves for judgment on the pleadings and summary judgment.  For the reasons below, the motion is DENIED.

**FACTUAL BACKGROUND**

The following facts are taken from the parties' submissions and are undisputed.  At the heart of this case is a directors and officers ("D&O") liability insurance policy issued by third-party defendant Chubb Custom Insurance Co. ("Chubb") to Commutair d/b/a Champlain Enterprises, Inc. ("Champlain").

1

Champlain engaged defendant and third-party plaintiff Marsh USA
Inc. s/h/a J&H Marsh & McLennan, Inc. ("Marsh") as a broker to
procure the policy.  After the policy took effect, Champlain
filed a claim in connection with an employee lawsuit, and Chubb
denied the claim.  Champlain later brought an unsuccessful
action for coverage against Chubb in federal court in the
Northern District of New York.

Plaintiff Andrew N. Price, Champlain's president, has now
sued Marsh in this Court for breach of contract for failing to
procure the coverage Champlain had requested.  Marsh, in turn,
has filed a third-party complaint against Chubb for breach of
contract for failing to provide the correct coverage to
Champlain.  That third-party complaint is the subject of the
instant motion for judgment on the pleadings and summary
judgment.

The present relationship between the parties began in
1999, when Champlain engaged Marsh as a broker to procure a
D&O policy.  On March 26, 1999, Marsh contacted Chubb for a
quote, and Chubb responded shortly thereafter by offering a
policy to Champlain.  Chubb indicated that the policy would
contain a Prior Acts Exclusion that would disallow coverage
for acts committed in whole or in part before the inception
of the policy, but that the Exclusion would be removed "with
receipt and review of a signed Chubb warranty."  On May 20,

1999, Chubb issued a binder of insurance to Champlain offering coverage and indicating that the Exclusion would be part of the policy "[t]o be removed with review of Chubb ForeFront Warranty and Application."

In late May 1999, Champlain submitted an application to Marsh, which transmitted it to Chubb.  The application form, which was filled out by Price, contained a space for the applicant to warrant whether any circumstances were known to exist that might give rise to a future claim.[1]  Price wrote "N/A" in the space provided, but he did not check the box marked "None."  Upon reviewing this section of the application, Chubb concluded that Price had failed to warrant unambiguously that no potential claims were known to exist. As a result, when Chubb issued Champlain's policy, it included the Prior Acts Exclusion.  The initial policy (the "First Policy") was in effect between May 20, 1999, and May 20, 2000.  Champlain renewed the coverage for two additional

---

[1] The warranty read:

It is important that you fill in the blank in this paragraph.  No person proposed for coverage is aware of any facts or circumstances which he or she has reason to suppose might give rise to a future claim that would fall within the scope of any of the proposed coverages for which you do not currently maintain insurance, or within such larger limits of liability, except:
None ( ) or _____

Exhibit N to Affidavit of Craig Weatherly at ¶ 11 (Paper 61) (June 30, 2005) (hereinafter Weatherly Affidavit).

one-year terms (the "First Renewal Policy" and the "Second Renewal Policy"), with the Prior Acts Exclusion remaining part of the policy each time.

In November 2001, while Champlain was covered by the Second Renewal Policy, two participants in Champlain's employee stock ownership plan ("ESOP") filed a complaint against Champlain and several of its directors, officers, and shareholders, in the U.S. District Court for the Northern District of New York ("the ESOP Complaint").  The complaint alleged, inter alia, that the defendants had breached their fiduciary duties under ERISA by artificially inflating the price paid by the ESOP participants, and that the defendants had personally profited from the transactions.

That same month, Champlain requested coverage from Chubb for the ESOP Complaint.  Because the allegedly wrongful acts had been committed in part before the inception of the First Policy, Chubb denied coverage based on the Prior Acts Exclusion.  Champlain responded by bringing an action in the Northern District of New York seeking a declaration that Chubb was obligated to provide coverage.  The court dismissed Champlain's complaint after concluding that the Prior Acts Exclusion barred coverage and that Champlain had failed to show that it had taken the necessary steps to have the Exclusion removed.  <u>Champlain Enters., Inc. v. Chubb Custom</u>

Ins. Co., 316 F. Supp. 2d 123, 130 (N.D.N.Y. 2003).

On September 26, 2003, Price initiated an action in Vermont state court, seeking damages from Marsh for negligence and breach of contract.  The suit was removed to this Court, which dismissed the complaint with leave to amend as to the contract claim only.  Mem. and Order (Paper 16) (June 8, 2004).  Price filed an amended complaint on June 28, 2004, asserting that Marsh had breached a contractual obligation to Champlain to procure D&O insurance that did not contain a prior acts exclusion.  Marsh denied the allegations and asserted a third-party complaint against Chubb, asserting that Chubb had breached a contractual obligation to Marsh to issue a policy to Champlain without a prior acts exclusion. Marsh also asserted a claim for indemnification against Chubb.

Currently before the Court is Chubb's motion for judgment on the pleadings and summary judgment.  Chubb argues that with respect to Marsh's breach of contract claim, it is entitled to judgment on the pleadings or, in the alternative, summary judgment.  It argues that it is entitled to summary judgment on Marsh's claim for indemnification.

## I. LEGAL STANDARD

A party may move for judgment on the pleadings after the pleadings are closed but within such time as not to delay the

trial.  Fed. R. Civ. P. 12(c).  A motion under Rule 12(c) is decided according to the same standard as a motion to dismiss under Rule 12(b)(6).  Hence, "accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the plaintiff, a complaint should not be dismissed under Rule 12(c) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Greco v. Trauner, Cohen & Thomas, LLP, 412 F.3d 360, 363 (2d Cir. 2005).

Summary judgment is granted only if there is no genuine issue as to any material fact and the moving party has shown that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel LLC, 293 F.3d 550, 554 (2d Cir. 2002).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The moving party has the initial burden of coming forward with those parts of the record it feels demonstrate an absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading" but must "set forth specific facts showing that there is a

genuine issue for trial."  Fed. R. Civ. P. 56(e).

## II. MARSH'S BREACH OF CONTRACT CLAIM

Marsh's first claim against Chubb is for breach of contract.  According to the Third-Party Complaint, "[i]n or about 1999, Marsh or its predecessor contracted with Chubb to procure an insurance policy (the 'Policy') for Champlain that provided directors and officers liability coverage."  Answer and Third-Party Complaint at ¶ 7 (Paper 18).  The Third-Party Complaint goes on to allege that pursuant to "the agreement between Marsh and Chubb," Chubb agreed to issue a policy with a prior acts exclusion that would be removed upon receipt from Champlain of an application and warranty.  Id. ¶ 11.  It further alleges that although Chubb received an application and warranty, it never removed the exclusion, nor did it notify Marsh that the application was insufficient.  Id. ¶¶ 15-16.

### a. Judgment on the pleadings

Chubb's first two arguments are that Marsh failed to plead its breach of contract claim adequately and that its claim is barred by the decision of the Northern District of New York in Champlain Enterprises, supra.  Because these arguments may be addressed without reference to the evidence in the case, the Court will analyze them according to the

standards for judgment on the pleadings.  Hence, for purposes of evaluating Chubb's first two arguments, the Court must treat Marsh's allegations as true.

### 1. Sufficiency of the breach of contract claim

Chubb argues that it is entitled to judgment on the pleadings because Marsh has failed to plead the elements of a breach of contract claim adequately.  In particular, it argues, the Third-Party Complaint fails to allege the existence of a binding contract between Marsh and Chubb.

Fed. R. Civ. P. 8(a) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  As the Supreme Court has stated:

> Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47 (1957).  The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim. See Conley, supra, 355 U.S. at 78 ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits").

Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002).

In keeping with this liberal standard, federal courts do not require a claim for breach of contract to be expressed in extensive detail.  "To state a claim in federal court for

breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996); Tagare v. Nynex Network Sys. Co., 921 F. Supp. 1146, 1149 (S.D.N.Y. 1996).[2] Chubb does not appear to dispute that Marsh has alleged breach and damages, but it contends that the Third-Party Complaint is inadequate with regard to the first two elements.

Marsh's allegations regarding the existence of a contract meet the standard set forth in Harsco, supra. Marsh alleges that "[i]n or about 1999, Marsh or its predecessor contracted with Chubb to procure an insurance policy (the 'Policy') for Champlain that provided directors and officers

---

[2] New York law applies to Marsh's breach of contract claim. Federal courts exercising diversity jurisdiction apply the choice of law rules of the forum state to decide which state's substantive law governs. Umali v. Mount Snow Ltd., 247 F. Supp. 2d 567 (D. Vt. 2003). Vermont, following the Restatement (Second) of Conflicts of Law, determines which state's law applies by looking to "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." Pioneer Credit Corp. v. Carden, 245 A 2d 891, 894 (Vt. 1968). The first two factors are entitled to substantial weight. Id. In this case, the alleged contract, as well as the negotiations, were concluded between employees of Chubb and Marsh within New York. Furthermore, New York is the principal place of business for both Champlain and Marsh.

liability coverage." Third-Party Complaint at ¶ 7. It goes on to allege various terms of the agreement between Marsh and Chubb, including that Chubb agreed to issue a policy in conformance with a binder and that Chubb would remove the Prior Acts Exclusion upon receipt of an application and warranty. Id. ¶¶ 9, 11.

Harsco also requires Marsh to plead its own performance of the contract. The Third-Party Complaint does not make explicit Marsh's obligations under the contract, but it does indicate that it performed the normal functions that would be expected of an insurance broker, such as forwarding Champlain's application to Chubb, see id. ¶ 13. Chubb's suggestion that the Third-Party Complaint describes a unilateral contract is unwarranted; if Marsh had failed to carry out its functions as an intermediary properly, it would presumably have been liable to Chubb for breach of contract.

The Court has already been called upon once to determine the adequacy of a breach of contract complaint in this case. In considering Marsh's motion to dismiss the original complaint, the Court held that Price had satisfied the pleading standards with regard to existence of a contract and breach by alleging that Champlain engaged Marsh as a broker and that Marsh breached its contractual responsibility to Champlain. Mem. and Order (Paper 16) (June 8, 2004). Just

10

as Price's brief allegations were sufficient to withstand a motion to dismiss, Marsh's allegations here are sufficient to survive Chubb's motion for judgment on the pleadings.

Other courts have also found that pleadings similar to those submitted by Marsh satisfied the standards of the Federal Rules.  For example, in <u>BJC Health System v. Columbia Casualty Co.</u>, 348 F.3d 685, 688 (8th Cir. 2003), the court considered a complaint that stated merely that "'Columbia Casualty contracted with BJC for reinsurance of ATG' at a guaranteed premium and that 'Columbia Casualty failed and refused to provide the insurance [sic] for the guaranteed premium.'"  The court held that the standard had been satisfied because the complaint put the defendant on notice as to the substance of the claim.  <u>Id.</u> at 688-89.

Chubb cites two unreported cases in support of its contention that the Rules require more detailed pleading. However, in both of those cases, the allegations in the pleading were more vague and conclusory than in this case. In <u>Tray-Wrap, Inc. v. Veneman</u>, No. 02 Civ. 6898, 2004 WL 2346619, *3, 4 (S.D.N.Y. Oct. 18, 2004), the court dismissed a claim alleging simply that the plaintiff had a "contractual right to inspection services" without even alleging the existence of the contract from which that right flowed.  In <u>Kougl v. Xspedius Management Co. of Dallas/Fort Worth, L.L.C.</u>, No. Civ. A.3:04CV2518-D, 2005 WL 1421446 (N.D. Tex.

11

June 1, 2005), the court held that an allegation that two parties "entered into a written or oral agreement," without any additional facts about the form or content of the agreement, was insufficient.  In contrast to the vague allegations contained in <u>Tray-Wrap</u> and <u>Kougl</u>, Marsh's allegations in this case are sufficiently detailed to put Chubb on notice as to the substance of the claim.

   *2. The <u>*Champlain Enterprises*</u> decision*

     Chubb suggests that Marsh is barred from arguing that Price submitted a completed warranty because the issue was already decided by the Northern District of New York in its April 7, 2003 decision in <u>Champlain Enterprises</u>.  In that decision, the court stated that Champlain had "failed to comply with the unambiguous policy terms necessary to effectuate ... removal" of the Prior Acts Exclusion. <u>Champlain Enters.</u>, 316 F. Supp. 2d at 130.

     Chubb's argument is based on the doctrine of collateral estoppel.  Under New York law, collateral estoppel binds a party to a prior ruling on an issue only if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." <u>Moccio v. N.Y. Office of Court Admin.</u>, 95 F.3d 195, 200 (2d Cir. 1996).

Neither element is satisfied in this case.  A careful reading of the court's opinion in <u>Champlain Enterprises</u> reveals that the Northern District of New York never had an opportunity to evaluate the adequacy of the application and warranty that Price submitted.  Instead, the court based its decision on the fact that Champlain had conceded that it was "not in possession of any documentary evidence proving it sent an application and warranty to have the exclusion removed[.]"  <u>Champlain Enters.</u>, 316 F. Supp. 2d at 129. Because Champlain apparently failed to obtain a copy of the application, it never had a chance to argue that Price's notation of "N/A" was sufficient to justify removal of the Prior Acts Exclusion, and the Northern District of New York never considered or decided that issue.

Furthermore, Marsh was not a party to the <u>Champlain Enterprises</u> case.  For this reason, it did not have a full and fair opportunity to litigate the issue of Champlain's completion of the warranty.  Since neither of the elements of collateral estoppel has been satisfied, the doctrine does not apply, and Chubb is not entitled to judgment on the pleadings.

**b. Summary judgment**

Chubb presents three additional arguments as to why it

should prevail against Marsh's breach of contract claim.[3]
First, it argues that Marsh's claim is based on a different
policy from the one under which Chubb denied coverage.
Second, it argues that it was appropriate to keep the Prior
Acts Exclusion in the policy because Chubb never received a
completed warranty.  Third, it argues that Marsh was aware of
the presence of the Exclusion but never sought its removal.
Since all three of these arguments rely to some degree on the
facts of the case, the Court will analyze them according to
the standards for summary judgment.  Hence, the Court will
not take Marsh's allegations as true, but rather consider
whether Marsh has gone "beyond the pleadings" and
"designate[d] specific facts showing that there is a genuine
issue for trial."  <u>Celotex</u>, 477 U.S. at 324.

     In considering whether Chubb is entitled to summary
judgment, the Court observes at the outset that discovery is
not yet complete.  <u>See</u> Weatherly Affidavit ¶¶ 11-16
(indicating that Chubb has failed to respond to certain
document requests and to produce certain witnesses for
depositions).  However, because the record now existing is

---

[3] Chubb argues for the first time in its reply memorandum
that it is also entitled to summary judgment because Marsh has
failed to provide evidence regarding the existence of a contract.
<u>See</u> Reply Mem. at 4.  Because Marsh has not been afforded an
opportunity to reply to this argument or to supplement the record
in that regard, it would be premature for the Court to rule on
Chubb's argument.  However, Chubb is not precluded from bringing
a second motion for summary judgment based on such an argument.

sufficient to establish that Chubb is not entitled to judgment as a matter of law, the Court will address Chubb's arguments below.

*1. Which policy forms the basis of the claim*

Chubb argues that Marsh's claim must fail because it relates to a different policy from the one under which Chubb denied coverage.  The Third-Party Complaint alleges that Chubb committed a breach of contract by failing to comply with the First Binder in issuing Champlain's initial policy. Chubb notes that the denial of coverage that gave rise to this dispute involved not the First Policy, but to the Second Renewal Policy.  Chubb argues that according to the undisputed facts, the Second Renewal Policy was issued precisely according to the terms of its applicable binder, which specified that all endorsements, including the Prior Acts Exclusion, would carry over from the previous policy.

Whether the Second Renewal Policy was issued in conformity with its binder is irrelevant to Marsh's claim, however.  Chubb's alleged breach occurred when it issued the first policy without removing the Exclusion.  The terms of the renewal policy were defined by what was in effect an automatic incorporation of the previous policy's terms, so Chubb's initial failure to remove the Exclusion from the first policy was a proximate cause of Chubb's denial of

15

coverage for the ESOP complaint.  That denial of coverage, in turn, led to the harm for which Marsh now claims relief.  For this reason, Marsh is correct that the issue is Chubb's compliance with the First Binder, not the later binders.

  *2. Sufficiency of the warranty*

     Chubb argues that even if it owed a contractual duty to Marsh to remove the Prior Acts Exclusion from the contract upon receipt of a completed warranty, that obligation was never triggered because Champlain failed to submit a completed warranty.  As noted above, the First Binder stated that the Prior Acts Exclusion would be removed "with review of Chubb ForeFront Warranty and Application."  Chubb has acknowledged that the warranty condition required the insured to provide Chubb with a signed and completed warranty.  <u>See</u> Mot. for Summary Judgment at 4 n.7.  Chubb contends that Champlain failed to meet this condition because Price's notation of "N/A" on the warranty form was not an unambiguous certification.

     Chubb has not established its entitlement to summary judgment on this issue.  Assuming that Chubb did have a contractual obligation to remove the Exclusion upon receipt of a completed warranty, that obligation may well have been triggered by Price's submission of the form with the notation "N/A."  The abbreviation "N/A" generally stands for "not

applicable." See Wiggam v. Assocs. Fin. Servs. of Ind.,
Inc., 677 N.E.2d 87, 92 (Ind. App. 1997) (describing "N/A" as
"the universal shorthand rendition of the phrase 'not
applicable'").  Hence, it would certainly be reasonable to
interpret Price's notation as a certification that no
potential claims were known to exist.  While Price could have
made his intention even clearer by checking the box marked
"None," the Court is unable to conclude as a matter of law
that the notation was ambiguous or that it did not trigger a
duty on Chubb's part to inquire further into what the
notation signified.  As discovery continues, the parties may
further explore the knowledge and intent of the parties.  At
this point, however, an issue of material fact exists as to
whether Price submitted a "completed" warranty.

   *3. Marsh's failure to object to the Prior Acts Exclusion*

   Chubb also argues that even if it did have an obligation
to provide a policy without the Prior Acts Exclusion, and
even if it breached that obligation, Marsh is "estopped" from
making a claim for breach of contract.  Chubb asserts that
even though Marsh received copies of Champlain's policies and
binders on numerous occasions over the course of two years,
Marsh never objected to the presence of the Exclusion nor
requested its removal.

   Although it uses the term "estopped," Chubb does not

attempt to establish the elements of an equitable estoppel claim.[4]  Instead, Chubb bases its argument on New York's "conclusive presumptive knowledge" rule.  Under that rule, "the declaration pages of an insurance policy, once received, and particularly when received multiple times in connection with renewals, constitute 'conclusive presumptive knowledge' of the terms and limitations of the policy."  <u>Feinblum v. Liberty Mut. Ins. Co.</u>, No. 02 Civ. 5085, 2003 WL 21673620, *2 (S.D.N.Y. Jul. 16, 2003).

The conclusive presumptive knowledge rule is inapplicable here for two reasons.  First, the rule binds only parties to an insurance contract, and Marsh was not a party to Champlain's policy with Chubb.  Second, the rule only applies to disputes over the terms of the policy under

─────────────────────

[4] The Second Circuit recently reviewed the elements of an equitable estoppel claim under New York law:

> Under New York law, the elements of equitable estoppel are with respect to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts.  The parties asserting estoppel must show with respect to themselves: (1) lack of knowledge and of the means of knowledge of the true facts; (2) reliance upon the conduct of the party to be estopped;  and (3) prejudicial changes in their positions.

<u>In re Vebeliunas</u>, 332 F.3d 85, 94-95 (2d Cir. 2003) (internal citations omitted).  Chubb appears to concede that it is not actually raising an argument based on this theory.  See Reply Mem. at 9 ("The cases cited by Marsh are inapposite because they address the elements of equitable estoppel.").

which coverage is sought.  See, e.g., Feinblum, 2003 WL at
*2; Rogers v. Urbanke, 599 N.Y.S.2d 697, 698 (App. Div.
1993).  In this case, Marsh is not disputing that Champlain's
policy contained the Prior Acts Exclusion; instead, it
contends that Chubb breached a separate contract, i.e., its
contract with Marsh, by issuing Champlain's policy.  For this
reason, whether or not Marsh was on notice that the policy
contained the Exclusion is irrelevant to its breach of
contract claim.

### III. MARSH'S CLAIM FOR INDEMNIFICATION

Chubb argues that it is entitled to summary judgment on
Marsh's second claim, which is based on the principle of
common-law indemnification.  That doctrine "permits one who
has been compelled to pay for the wrong of another to recover
from the wrongdoer the damages it paid to the injured party."
17 Vista Fee Assocs. v. Teachers Ins. & Annuity Ass'n of Am.,
693 N.Y.S.2d 554 (App. Div. 1999).  A person is entitled to
indemnity if he, "in whole or in part, has discharged a duty
which is owed by him but which as between himself and another
should have been discharged by the other[.]"  McDermott v.
City of New York, 428 N.Y.2d 211, 217 (N.Y. 1980).

As a threshold matter, the Court must determine whether
Marsh's claim for indemnification is ripe.  Under New York
law, a claim for indemnification generally does not ripen

19

until the party seeking indemnification has paid a judgment
in the underlying action.  Harris v. Rivera, 921 F. Supp.
1058, 1062 (S.D.N.Y. 1995).  However, courts have recognized
a broad exception to the general rule:

> [w]here indemnification is asserted in a third-party
> action ... for the sake of fairness and judicial
> economy, the CPLR allows third-party actions to be
> commenced in certain circumstances before they are
> technically ripe, so that all parties may establish
> their rights and liabilities in one action.

Id. (quoting Mars Assocs. v. New York City Educ. Const. Fund,
513 N.Y.S.2d 125, 133 (App. Div. 1987)).  This case falls
squarely within the exception; determination of Marsh's
indemnification claim at this stage of the case will allow
all of the parties to determine their rights and liabilities
in a single action.  Accordingly, the claim is ripe for
adjudication.[5]

Chubb argues that Marsh is not entitled to
indemnification because Marsh was itself at fault.  Under the
rules of common-law indemnity, "a party which had itself

---

[5] The cases cited by Chubb do not compel a conclusion that
the claim is unripe.  In North Star Reinsurance Corp. v.
Continental Insurance Co., 604 N.Y.S.2d 510, 516 (N.Y. 1993), the
court mentioned in dicta the general rule that "a common law
indemnification claim arises when the party seeking indemnity ...
has suffered an out-of-pocket loss," but it did not even reach
the applicability of the well-recognized exception stated in
Harris, supra.  Piccirillo v. Beltrone-Turner, 727 N.Y.S.2d 721,
724 (App. Div. 2001) did not involve a third-party claim, but
rather a cross-claim of indemnity between two defendants.
Dismissing the cross-claim in Piccirillo as premature did not
implicate the same considerations of judicial economy that are at
issue here, since all defendants remained parties to the action.

actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine." Travelers Indem. Co. v. AMR Servs. Corp., 921 F. Supp. 176, 184 (S.D.N.Y. 1996) (quoting Trustees of Columbia Univ. v. Mitchell/Giurgola Assocs., 492 N.Y.S.2d 371, 375 (App. Div. 1985)).  Chubb argues that Marsh acted negligently in two ways: by failing to advise Price to complete the application properly, and by failing to notice and request removal of the Prior Acts Exclusion.

Chubb's first contention is that Marsh is at fault for failing to advise Price to complete the warranty properly by checking the "None" box.  This contention is without merit. As the Court observed above, a logical interpretation of Price's "N/A" notation was that it was equivalent to checking the "None" box.  At a minimum, an issue of material fact exists with respect to whether Marsh was negligent for failing to advise Price to mark the warranty differently.

Chubb's second contention is that Marsh was negligent in that it had several opportunities to review the first policy and the renewal policies, but it failed to notice the presence of the Prior Acts Exclusion or to request its removal.  Again, however, an issue of material fact exists with regard to Marsh's negligence.  Marsh has submitted an affidavit with supporting materials suggesting that it did seek removal of the Prior Acts Exclusion, see Ryder Affidavit

¶ 2, although it appears that this occurred subsequent to the filing of the ESOP complaint.  In any event, absent a finding by the court that no reasonable jury could find that Marsh was not negligent, the question is for the jury to decide. See, e.g., Gordon v. New York, 523 N.Y.S.2d 445, 449-50 (N.Y. 1987) ("Questions concerning what is foreseeable and what is reasonable conduct under the circumstances are generally for the fact finder and not for the court to resolve."); see generally Restatement (Second) of Torts § 328B(d) & cmt. g.

Chubb cites Trizzano v. Allstate Insurance Co., 780 N.Y.S.2d 147, 150 (App. Div. 2004) and Baseball Office of the Commissioner v. Marsh & McLennan, Inc., 742 N.Y.S.2d 40, 48 (App. Div. 2002) to argue that Marsh was obligated to notice the presence of the Exclusion.  These cases establish that a broker has a duty to procure the insurance requested by a client, but they do not hold, as Chubb argues, that failure to procure such insurance is prima facie evidence of negligence by the broker.  See, e.g., Trizzano, 780 N.Y.S.2d at 150 ("An insured must show that the broker failed to discharge the duties imposed by the agreement to obtain insurance either by proof that the broker breached the agreement or that it failed to exercise due care in the transaction.").  Since the uncontested facts do not conclusively establish that Marsh breached the agreement, nor that Marsh's behavior was so unreasonable as to be negligent

as a matter of law, summary judgment is not appropriate on this issue.

## CONCLUSION

For the foregoing reasons, Chubb's motion for judgment on the pleadings and summary judgment is DENIED.

Dated at Burlington, Vermont this 30th day of September, 2005.

/s/ William K. Sessions III
William K. Sessions III
Chief Judge