```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF VERMONT


ANDREW N. PRICE, Individually     :
and Assignee of Champlain         :
Enterprises, Inc., JOHN A.        :
SULLIVAN, JR., E. JAMES           :
DROLLETTE, and ANTONY VON ELBE,   :
     Plaintiffs,                  :
                                  :
          v.                      :   File No. 1:03-CV-292
                                  :
MARSH USA, INC., s/h/a J&H        :
MARSH & MCLENNAN, INC.,           :
     Defendant and                :
     Third-Party Plaintiff,       :
                                  :
          v.                      :
                                  :
CHUBB CUSTOM INSURANCE COMPANY,   :
     Third-Party Defendant.       :
_____   :
```

RULING ON PLAINTIFFS' MOTION TO AMEND COMPLAINT
AND ORDER OF REMAND
(Paper 113)

I.   Introduction

A serious issue has recently surfaced in this breach of contract action - the validity of Champlain Enterprises, Inc.'s ("Champlain") assignment (the "Assignment") of its rights against Marsh USA, Inc. ("Marsh") to Plaintiff Andrew N. Price ("Price") (who was and is the president of Champlain). The Assignment, which is strenuously attacked by Marsh as invalid, forms the basis of Price's ability to maintain the bulk of this action. In an attempt to blunt the impact of

1

Marsh's argument, Plaintiffs have, among other things, filed a motion to amend their complaint to add Champlain as a plaintiff. For the following reasons, Plaintiffs' motion to amend is granted and this action is remanded to Chittenden Superior Court for lack of jurisdiction.

II. Background[1]

At the heart of this case is a directors and officers liability insurance policy (the "Policy") issued by third-party defendant Chubb Custom Insurance Co. ("Chubb") to Champlain. Marsh was Champlain's insurance broker and helped procure the Policy for Champlain.  After the Policy took effect, Chubb denied a claim filed by Champlain in connection with an employee lawsuit.  Based on this denial, Champlain brought an unsuccessful action for coverage against Chubb in federal court in the Northern District of New York.

Thwarted in the Empire State, Champlain attempted to assign any claims it had against Marsh to Price, a Vermont resident, apparently content to see its claims advanced by Price.  Relevant aspects of the Assignment include: (1) it was drafted by Champlain's counsel, William Owens; (2) Champlain selected Price's counsel and is paying the legal fees in connection with

---

[1] The following factual recitation sets forth those facts necessary to decide the pending matters.  These facts are taken from the parties' submissions and are undisputed.

representation of Price; and (3) the assignment was made without consideration.  Immediately thereafter, Price filed the instant action in Chittenden Superior Court, which was removed to this Court based on diversity.  Several dispositive motions (and years) later, the case was inherited by this Judge, and a status conference was immediately convened.  At the June 2006 conference, the Court, upon realizing what little discovery had been conducted, set an aggressive discovery schedule that contemplated completion of discovery and filing of dispositive motions by September 30, 2006.  Around this September deadline, three related events occurred contemporaneously: (1) Plaintiffs filed a motion to amend their complaint to include Champlain as a plaintiff, (Paper 113); (2) Champlain filed a complaint against Marsh in New York state court substantially similar to the complaint in this case (Paper 129, Ex. 19); and (3) Marsh filed its motion for summary judgment raising as its main line of defense, at least against Price, the invalidity of the Assignment, (Paper 118).

III. Discussion

The Court now turns to the interrelated issues of the validity of the Assignment and Plaintiffs' motion to amend.

A.   The Assignment is invalid

Because this is a diversity case, in considering the validity of the Assignment, this Court must apply the substantive law of Vermont, including choice of law rules.  See Green Mountain Power Corp. v. Certain Underwriters at Lloyd's London, 1995 WL 433597, at *2 (D. Vt. Sept. 30, 1994).  In Vermont, the choice of law concerning the Assignment "is governed by the law of the state with the most significant relationship to the contract at issue.  In addition, the court must take into account certain principles, including the relevant policies of the forum and other interested states, the protection of justified expectations, certainty, predictability and uniformity of result, and ease of determination and application of the law to be applied."  Id.  Plaintiffs do not dispute Marsh's assertion that Vermont law should apply, (Paper 146-2 at 25), and this Court independently agrees.  Vermont has the strongest interest and most significant relationship to questions surrounding the Assignment because the Assignment's purpose was to allow Price, a Vermont resident, to bring Champlain's claims in Vermont state court.

Under the law of Vermont, an assignment is a contract and like any other contract, requires consideration to be valid. See, e.g., Belknap v. Northwestern Mut. Life Ins. Co., 188 A.

897, 899 (1937); Mathews v. Drew, 172 A. 638, 640 (1934) (consideration is an essential element of an assignment). Plaintiffs have failed to cite a Vermont case to the contrary; nor have they disputed that the Assignment was made without consideration or that Champlain has at all times been at the helm of Price's lawsuit.  They have never asserted that the Assignment was intended to be a gift.  See, e.g., Kelton Motors, Inc. v. Bank of Vermont, 97 F.3d 22, 27-28 (2d Cir. 1996) (explaining how an assignment usually requires consideration in order to be effective, but under certain circumstances, may pass by gift). Instead, Plaintiffs rely on a line of cases interpreting 28 U.S.C. § 1359.  See, e.g., Prudential Oil v. Phillips Petroleum, 546 F.2d 469 (2d Cir. 1976).  That reliance is misplaced, however, because 28 U.S.C. § 1359 deals only with a situation "in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."  28 U.S.C. § 1359.  Such a situation does not exist in this case, which was brought by Plaintiffs in Vermont state court and removed to this Court on the basis of diversity.

   Thus, taking into account the absence of consideration, as well as Champlain's retained control over its claims and Champlain's actions which confirm nothing was ever passed to

Price (such as Champlain's subsequent filing of the action in New York state court), the Court finds the Assignment to be invalid.[2]

B.  Motion to amend complaint

Against this backdrop, the Court turns to Plaintiffs' motion to amend complaint.  Rule 15(a) provides that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  To determine whether leave should be given, the Court should consider whether: (1) the motion is being made after an inordinate delay without adequate explanation; (2) prejudice to the defendants would result; (3) granting the motion would cause further delay; and (4) the amendment would be futile.  See Mountain Cable Co. v. Pub. Serv. Bd. of Vermont, 242 F. Supp. 2d 400, 403 (D. Vt. 2003).

Upon considering the facts, unique procedural history, and related litigation at play here, the Court concludes the Rule 15 factors weigh in favor of allowing Plaintiffs to amend their complaint.  The motion was not made after inordinate delay without adequate explanation.  At the outset, this case was

---

[2]The Court has reviewed the documents submitted in camera related to the pending motion to compel, (Paper 123).  As Plaintiffs surely know, the documents do nothing to change the Court's conclusion about the Assignment's validity.

Because this matter is being remanded, the Court need not address the motion to compel, but will send the relevant documents, under seal, along with the remainder of the file to Chittenden Superior Court.

subject to several dispositive motions which hampered the discovery process.  It was not until the Court's order requiring discovery to be completed by September 30, 2006 that the case truly began to develop.  Furthermore, the Court accepts Plaintiffs' counsel's explanation that he moved to amend immediately after he recognized a serious challenge to the validity of the Assignment, (Paper 138 at 5-6); a challenge which, although it may have been obliquely referred to in previous filings, was not apparent to all until the end of the accelerated discovery period.  Contrary to Marsh's contention, the Court finds Plaintiffs' attempt to amend is not motivated by a desire to destroy jurisdiction.  Delay in this context does not provide a basis to deny leave to amend.

As to the second factor, Defendants will not suffer prejudice if the motion to amend is granted because adding Champlain will bring no new claims to the table - Champlain's claims will simply be the exact claims Price has asserted on behalf of Champlain from day one.  And in fact, Marsh could suffer prejudice if Champlain were <u>not</u> added as a plaintiff because then, any resolution of this action would still subject Marsh to litigation in the case filed by Champlain on September 28, 2006 in New York state court.  Similarly, the third factor, further delay, weighs in favor of allowing Plaintiffs to amend

7

their complaint because any delay that may result from remand is nugatory, especially when compared with the possible delay involved in litigating this dispute in two fora.

As to the last factor, because the assignment is invalid, the futility prong weighs in favor of allowing Plaintiffs to amend their complaint.

In addition to the above analysis though, Marsh proposes "any attempt by a plaintiff to amend his pleading to destroy diversity is subject to scrutiny in addition to that imposed by Rule 15(a)." (Paper 128 at 8). The cases cited by Marsh in support, however, deal with the direct interpretation of 28 U.S.C. § 1447(e) which provides: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the Court may deny joinder, or permit joinder and remand the action to the State court." While § 1447(e) is inapplicable on its face to the facts of this case (because Plaintiffs have not sought to join additional defendants), the Court nevertheless believes the equitable factors discussed in the cases cited by Marsh are instructive, albeit somewhat repetitive of the Rule 15 factors already contemplated.

With a § 1447(e) lens, district courts in the Second Circuit permit a joinder which destroys diversity only when consistent

with principles of fundamental fairness pursuant to the following factors: "(1) any delay, as well as the reason for delay, in seeking joinder; (2) resulting prejudice to defendant; (3) likelihood of multiple litigation; and (4) plaintiff's motivation for the amendment." Nazario v. Deere & Co., 295 F. Supp. 2d 360, 363 (S.D.N.Y. 2003).  Taking each of these factors into account, the Court concludes they point toward allowing Champlain to become a plaintiff in this action.  The delay resulted from an unanticipated challenge to the Assignment, there is no appreciable prejudice to Defendants, multiplicity of litigation could give rise to inconsistent judgments, and the underlying motivation for the amendment is not "a desire to defeat diversity jurisdiction, but rather [] a good faith desire to seek recovery from those parties they contend are liable to them." Wyant v. Nat'l R.R. Passenger Corp., 881 F. Supp. 919, 923 (S.D.N.Y. 1995) (permitting joinder of non-diverse defendant after removal and remanding the case).

   For these reasons, Plaintiffs' motion to amend is granted.

C.  Jurisdiction

Next, the Court considers the jurisdictional consequences of adding Champlain, which is non-diverse because both it and Marsh have their principal places of business in New York.[3]

Ordinarily, subject matter jurisdiction and the determination of whether diversity of citizenship exists are made at the outset of the case and govern regardless of subsequent changes in parties.  See Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 428 (1991).  But this general rule is inapposite to the situation at hand.  Freeport-McMoRan was a diversity case in which one of the plaintiffs transferred its interest in the contract in suit to a non-diverse entity under Fed. R. Civ. P. 25 (which deals with the substitution or addition of parties upon transfer of interest) for business purposes.  Id.  In holding that the transferee's citizenship was immaterial, the Freeport-McMoRan Court emphasized that the transferee "was not an 'indispensable' party at the time the complaint was filed" and in fact, "had no interest whatsoever in the outcome of the litigation until sometime after suit was commenced."  Id.  Additionally, the Supreme Court was concerned that a contrary

---

[3]Marsh concedes the addition of Champlain as a plaintiff would "destroy diversity and divest this Court of jurisdiction," (Paper 128 at 8), while Plaintiffs focus only on litigating the merits of this dispute, stating "jurisdiction should yield in the interest of simple justice."  (Paper 138 at 3).

rule "could well have the effect of deterring normal business transactions during the pendency of what might be lengthy litigation." Id.

Here, in stark contrast and apart from the fact that Plaintiffs are not seeking to add Champlain as a plaintiff pursuant to Fed. R. Civ. P. 25,[4] Champlain has had an interest in the claims at issue well before Price even filed suit.  And considering the invalidity of the Assignment, Champlain never relinquished those claims.  Moreover, the Assignment's purpose was not for a legitimate business reason.

Even so, application of the 'indispensability test' advanced by a number of other Circuits reaches the same result.  As those Circuits have explained, the exception to the Freeport-McMoRan rule is that "diversity jurisdiction will be destroyed if it is determined that the later-joined, non-diverse party was indispensable to the action at the time it commenced." Salt Lake Tribune Publ'g Co. v. AT&T Corp., 320 F.3d 1081, 1096 (10th Cir. 2003); Nat'l Westminster Bank, PLC v. Grant Prideco, Inc., 343 F. Supp. 2d 256, 259 n.12 (S.D.N.Y. 2004) (collecting cases);

---

[4] The Court pauses to note that although the Second Circuit has not weighed in on the scope of Freeport-McMoRan, "[s]everal circuits have expressed an inclination to limit the application of Freeport-McMoRan to its precise holding" in the context of adding a party pursuant to Fed. R. Civ. P. 25. Williams v. Dow Chem. Co., 326 F. Supp. 2d 443, 446 (S.D.N.Y. 2004) (collecting cases).

11

<u>Binswanger of Pennsylvania, Inc. v. Spencer's, Inc.</u>, 2000 WL 4141, at *1 (E.D. Pa. Jan. 4, 2000) (allowing plaintiff to amend its complaint to add a non-diverse plaintiff and then remanding the case because the added plaintiff was indispensable).

Under this analysis, Champlain is indeed an indispensable party. A judgment rendered in the absence of Champlain may be prejudicial to the existing parties in the lawsuit and at the very least, proceeding without Champlain will subject Marsh, and possibly others, to another action in New York state court with the possibility of inconsistent judgments. No party has suggested, and the Court is not aware of a way by which a judgment or other relief would protect against duplicitous litigation.

Quite simply, at its core this dispute was, and currently remains, a controversy between non-diverse entities Champlain and Marsh. Accordingly, the addition of Champlain destroys diversity jurisdiction such that this action must be remanded to Chittenden Superior Court.

IV. <u>Conclusion</u>

It is hereby ordered:

1. Plaintiffs' motion to amend, (Paper 113), is GRANTED; and

2. This action is REMANDED forthwith to Chittenden Superior Court for lack of jurisdiction. Along with the case file, the Clerk of the Court shall send to

>Chittenden Superior Court, under seal, the documents submitted by Plaintiffs on January 3, 2007 for in camera review.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 25th day of January, 2007.

                                      /s/ J. Garvan Murtha
                                      J. Garvan Murtha
                                      United States District Judge